Good morning. My name is Stephen Montoy. I'm here representing the plaintiff appellant below. Your Honors, when you read the trial transcript in this case, the error of the trial court's exclusion of material evidence is obvious. Reading Ms. Slaughter-Payne's testimony at trial is almost like trying to read, not to want to use it, to use a cliche that's applicable. It's like reading Hamlet without the prince. You don't even know what the case is. The district court excluded so much evidence of a pattern of protected activity by Ms. Slaughter-Payne starting in 1996, going to 1997, 1980, 1998, 1999, 2000, all the way up to 2011. So chronologically, there was a chain. So the district court had read our mandate to it as saying the only thing for trial is the claims of retaliatory animus in her transfer based on the August 2001 incident. And that does appear to be what the disposition says. So why wasn't the district court correct to tell the parties to focus on that particular claim? Your Honor, I've, as you know, I'm new to this case. But I have had numerous opportunities which I've taken to read this Court's mandate. And I know, Your Honor, you participated in the drafting of this mandate. It doesn't limit the scope of protected activity. It is true, Your Honor, that this Court did specify the August 2001 protest is having particular significance. However, Your Honor, this Court never said that the only relevant protected activity was the August 2001 protest. In fact, if that were true, then every time this Court in its mandate discussed the issue of a protected activity, it would have employed the singular noun rather than the plural noun. And in fact, Your Honor, on page 5 of the Court's mandate, the Court specifically uses the noun activities. It's two lines up from Arabic numeral 5 on page 5. Because Slaughter Payne submitted sufficient evidence to raise a genuine issue that the threatened one-person RIF and lateral transfer were adverse employment actions in retaliation for her protected activities, we reverse. So, Your Honor, the Court never – the Court, in fairness, the Court didn't even consider the issue of what protected activities were admissible. It focused upon the last one, and that made perfect sense, because the last one was so chronologically tight to the adverse action that followed in September, just a month later in 2001. But this Court never suggested that a string of closely related and chronologically tight protected activities were irrelevant. And in fact, in your – in this Court's other opinions, this Court always says that because the question of a retaliatory motive is sometimes elusive, in order to show motivation, you have to show the whole background. And, Your Honor, this – So, I mean, what you're saying is that there's this tapestry, in effect, of this relationship between Ms. Slaughter Payne and her employer that goes back over time and these things stack up until, in the end, they fire – well, they have the adverse employment action. The one question I have is, despite the ruling, the trial judge did seem at times to say, well, now you can maybe weigh in with some impeachment evidence. So even if we were to credit your argument that trying to exclude all this evidence was in error, then the question shifts to was it prejudicial or was it too Swiss cheese by that point? So I'd appreciate your comment on that. Yes, Your Honor. Preliminarily, though, the pattern of protected activity that Ms. Slaughter Payne was not allowed to speak to the jury about at all is summarized on page 228 from the trial order, and it starts specifically from 1996 and goes all the way to 2001. Was the exclusion harmless? Absolutely not. I'll tell you why. And you're right, Your Honor. The judge did back – somewhat back off from its blanket exclusion of all of this evidence. During the cross-examination – no, during the direct examination of John Feers, the medical director of the VA hospital, because counsel for the government asked him, did you have any retaliatory animus or did you desire to retaliate against the plaintiff? And he said no. So the district court did allow some questioning into his motive. But what was the plaintiff allowed to go into all of these facts that were set forth in minute detail, chronologically, in the pretrial order? Absolutely not. It was prejudicial because, in fact – and I think this is a matter of common sense. Oftentimes, not all the time, but oftentimes the breadth and depth of retaliatory animus corresponds to the breadth and depth of protected activity. So, remember, this is someone who had already complained about discrimination at the VA hospital. A VA investigator came out to conduct a neutral investigation, and the VA investigator said, yeah, this lady, she hasn't been discriminated against because she's African-American, but she has been retaliated against. The district court also excluded that finding from evidence, which we also believe is prejudicial. But the breadth and depth of her protected activity clearly – if someone just complains, hey, you know, this person in a sexual harassment case, I think that Dr. Jones compliments women on their attire too flirtatiously. If there's just one such complaint, rather than a series of complaints over a series of years saying Dr. Jones is molesting women at work, oftentimes, once again, the breadth and depth of the protected activity suggests a breadth and depth of retaliatory motive. I'm a little confused about the theory here, because in the – at the trial, it appeared that the theory had to do with Mr. Feers and his retaliatory motive. Is that the theory, or what's the theory of the case from your perspective? The theory of the case, Your Honor, from my perspective, is exactly the way Your Honor summarized it. Even though the government claimed in pretrial arguments that Mr. Feers wasn't the decision-maker, when the government actually put Mr. Feers on the witness stand in direct examination, he's the one who made all the decisions. He testified that in his direct examination. And even though he was acting on the advice of his subordinates, he also admitted in his direct examination, Your Honors, that he tweaked their advice and oftentimes didn't accept it in toto. So Mr. Feers was a decision-maker in reference to the one-person riff – his name is on the document – in reference to the initial buyout, and in reference to the involuntary transfer back to HR, which coincidentally would also, under the VA's rules, would have prevented Ms. Payne from continuing to advocate on behalf of alleged victims of discrimination. Is that somehow she would be taken out of her union status? Yeah. When you're in HR, you cannot – you can't engage yourself in any type of labor protests or discrimination protests. So it would have silenced somebody that the VA investigator had already labeled someone who was like an EO rabble-rouser. And that wasn't Mr. Feers. It was one of his subordinates. It was Ms. Luding and said it was Mr. Feers, but it wasn't. So if the focus is on Mr. Feers, then as I read the transcript where the court says, well, you can go into background in order to show his state of mind. His state of mind is relevant. And then there was extensive examination of Mr. Feers about his history of his involvement or his knowledge of Ms. Slaughter Payne, including where he was and he said, well, we do not agree or words to that effect. So it did seem fairly extensive. What was missing from that that related to Mr. Feers? The chronology going all the way back to 1996 and the fact that this had even made the papers. And Mr. Feers was identified in the paper when this discriminatory email came out using some type of eubonics or something. That made a local African-American newspaper called the Informant, but it also made the Arizona Republic. And Mr. Feers' name was in the paper. And that was relevant because when you're the head of the place and your name is in the paper in reference to a discriminatory work environment, that is embarrassing. So that could have come in right under the rubric. Your Honor, I just read that last night, and I don't think it was touched on, Your Honor. However, that was in some ways the heart of the case. And prejudice is also reflected, Your Honors, unquestionably in my humble opinion in the jury instructions. Because the jury ---- But getting back to the question about the email, as I read the district courts allowing him to testify about his state of mind and really opening the door to all that questioning, whether or not he actually testified about the email, it certainly seems like that would have been permissible line of questioning. Is that not correct? Your Honor, I believe that it is incorrect. I think the district court really limited the scope of cross-examination. She limited this issue so that none of these details that were very, very specific and are set forth in the excerpts of the record at page 228, and it goes on and on from page 7 until page 11, none of that got in. Was that the detail work what happened before the transfer? Yes, Your Honor. She was saying that the mandate came down to me to look at just the transfer time, and I want to know all the evidence that shows discrimination dealing with that transfer. Yes, Your Honor. And so you say, well, even though the mandate came down just for that one, she should have been able to put in all this evidence that happened the 10 years before, and then your role would have to show there's an abuse of discretion. Yes, Your Honor. First of all, we don't believe that the court's mandate actually excluded that evidence. We don't believe that was at issue, and we believe that when you carefully read the mandate, because it speaks in the plural, it didn't mean to exclude anything. And we do believe it was an abuse of discretion to exclude the breadth of this. Okay. I'm just getting what your role is. So your view is that she could not limit it just to the issue that was referred back. That is, that was the only one we asked her to look at. Well, Your Honor, I don't agree. Your view is everything that happened the prior 10 years deals with that. And it was an abuse of discretion for her to limit the evidence to what happened on the transfer. Yes, Your Honor. Yes, Your Honor. The court did use the August 2001 protest as an example, but the court, the scope of the universe is not limited to the best example Your Honor chooses to select to establish its point. I'd like to reserve the remaining time. Thank you, Your Honors. Thank you very much. May it please the court, I'm Anne Harwood, and I represent Eric Shinski. He is the Secretary of the U.S. Department of Veterans Affairs. Your Honors, this case was filed in 2003. The events happened in 2001 and before. This is the third time this case has been before this Court, and now after a jury verdict in the defendant's favor. It seems as though the Court has focused on the mandate, and I will focus my argument on that as well. We believe the mandate is clear as to what was at issue in this litigation, and what was at issue for the trial was the one-person RIF and the lateral transfer. The United States or the VA stipulated that Ms. Slaughter-Pain had engaged in protected activity, and what is important is even the plaintiff stipulated to that. In the party's joint proposed pretrial order, the Slaughter-Pain agreed that that was the scope. It was related to the 2001 informational protest and as it relates to the one-person RIF and lateral transfer. But it's easy to say that. That was the adverse action being sued about, but what we're talking about here is what's testimony relevant to that, and the district judge interpreted the order to say as if nothing before 2001. That's how she interpreted it. And as a result, the history between these two people, which was extensive, was in large part excluded. I'm hard-pressed to see why that wouldn't, why that would be harmless, because what their relationship was and how it stacked on top of one event after another certainly is relevant to what happened. Now, they'd be in the end, the jury would say, doesn't matter, we don't think there was a problem. But why shouldn't the jury be able to hear the whole story? Well, first a couple of points about that, Your Honor. First of all, the judge did not, she entered a motion, an order on a motion in limine, but she said to the plaintiff's attorney, if you can show me why this evidence is causally related and relevant, I'll let it in. And she allowed a couple of times for him to brief it and argue it in court. He did argue it. I mean, there's a lot of responses to the motion in limine. There's listings in the pretrial order and some other places where he basically says, look, this is a whole pattern, practice, and course, so we argued it. She kind of stuck to her guns, which is her, you know, option to do. So I don't know what more do you think would be appropriate at that point. He never tried to offer it into testimony. And under the Tennyson case, even if there's a motion in limine that says the evidence is precluded, you need to try to offer it into evidence and get a ruling from the court. Third. Well, he, when he said, I have information, you know, I go back, he said, but I think that's precluded by your order. She doesn't say, no, it's not precluded by my order. So everybody's around transcript 730-ish, everybody's assuming that the court order is still in effect. She's giving him some leeway on impeachment, but impeachment evidence is quite different than substantive evidence that, for example, that his client could offer. What is your comment on that? Well, Your Honor, first of all, the alleged discriminating officials in the retaliation case was Mr. Martinez and Ms. Van Halvern. It was not John Fierce. And prior EEO claims had different discriminating officials. When you're saying the alleged officials, explain what you mean, because the opposing counsel is saying the theory of the case from their perspective was that it was Mr. Fierce, was the person with the retaliatory animus. Well, the plaintiff's case attempted to morph over time as the trial proceeded. But this is a Title VII case, and theoretically the plaintiff is supposed to submit its allegations during the EEO process and be limited to those. And if you're naming two people as your responsible management officials, you can't all of a sudden at trial now say it's somebody else. Is that correct? I mean, that's sort of an exhaustion argument. And I know we read these EEO complaints very liberally and say as long as it could reasonably arise out of what was claimed to the EEO, that's enough. Do you have a case that says every individual alleged to be discriminatory has to be named in order for there to be exhaustion? Not off the top of my head, Your Honor. But the complaint only alleges these two individuals. Mr. Fierce's name is nowhere in the second amended complaint. And that's important. The defendant should only have to defend against the claims that are made against it and shouldn't have to be ---- What about in the pretrial order? In the pretrial order as well. Yes. This has always been about the Van Halderen. She was the person who was asked to reduce her budget because the VA was anticipating a bad fiscal year in FY02, which started August ---- I'm sorry, October 1st of 2001. She was asked to find ways to reduce her budget. The VA was trying to save this woman's job. They weren't trying to get rid of her. They did everything they could. And in the end, the people that lost their jobs in the mental health area were either offered buyouts, they retired, or they were moved to other areas. And Ms. Slaughter-Pain was one of those people that didn't fit well with moving her anywhere. The only thing she was really qualified to do was to go back to the HR department where she had come from before she went to mental health. And so that's why she ended up there. That was the only job in the VA that she qualified for. Well, I'm looking in the pretrial order and in the part where it's the disputed part where they start talking about Mr. Feers. So my understanding, too, is once the pretrial order is filed, the complaint goes out of the case. So he's on board here, at least in disputed facts, as to what the story is. So I'm not sure why Shinseki and the department are not on notice as to the purported role that he played. Well, Mr. Feers certainly did play a role, but it wasn't the whole point of the to do with all the other EEO complaints in the past. These prior EEO complaints went back to 1996 and 1998. And furthermore, Your Honor, the plaintiff did get to get into those issues. They did get to ask Mr. Feers about his history with Ms. Slaughter-Pain when he was cross-examined. So it's harmless, even if there was error in the ruling, it was harmless error because they were able to get into it. He was asked about the email that was circulated at the VA in 1998, which was derogatory towards black employees. And you can find that at the supplemental excerpts of records, 728 to 730. And he also was asked about Ms. Slaughter-Pain's removal as a black employee program manager. That was a claim that was actually dismissed by summary judgment and affirmed by this court. But the plaintiff was still allowed to get into that. And Slaughter-Pain did testify about what was going on before 2001. In her direct testimony, she talked about, and this is at the supplemental excerpts of record 401 to 402, where she talks about labor and employee rights issues with management. And she also got to talk about, and Mr. Feers talked about, a 2002 informational protest in the year 2000. And so she got into plenty of stuff, and it would have been confusing to the jury if she was allowed to get into claims that had not only been abandoned back in 96 and 98, but also dismissed. Well, the question I have is we review these evidentiary questions for abuse of discretion, but if it's discretion that the district court didn't exercise, then we can't substitute our discretion for that of the district court. In reading the transcript, it seems that the district court had the view that there was this magic dividing line as a result of the mandate. If the district court was in error in that interpretation, which would be a legal error, do you have any support or authority that would suggest we could still affirm under abuse of discretion? Well, Your Honor, the VA had a legitimate nondiscriminatory reason for the actions that it took. And we stipulated to protected activity. The plaintiff argued, and we don't know if the jury found a prima facie case, but there is also the legitimate nondiscriminatory reason, which was the VA's budget. It was anticipated that they were going to have a bad budget. And the legitimate nondiscriminatory reason for moving this slaughter pain out of mental health and trying to find a job for her was that they were trying to save her job. And whether or not the plaintiff established a prima facie case, we still have that. That's all tied up in the retaliation, though, isn't it? I'm sorry? Isn't that tied up in the retaliation? She would view that budget, RIF, move to a different job. Wouldn't she view that as part of the retaliation, as a trumped-up reason? Although I'm not saying it is, but that's her argument, isn't it? Correct. So I'm not quite sure how you can stand in front of us and say, well, don't worry about it, because, in fact, the department established a legitimate nondiscriminatory  That would be a jury question, correct? Right. And the jury came back in the defendant's favor. Right. But that just begs the question of whether the jury had all the appropriate evidence in front of it to begin with. Your Honor, I think the point is that even though initially the Court had sort of a hard and fast rule, she did let in this evidence and she did allow multiple attempts for the plaintiff to try to argue it. And, you know, she used her discretion and balancing under Rule 403, knowing this case, and as long as she's had it since I think it was filed in 2003, she knows all the history of the case and that a lot of the stuff has been dismissed, put aside, not relevant, abandoned, whatever. And so to allow all this additional information to come in would have just been confusing to the jury. What case are we talking about? We're talking about a case where in the timing of things, if you look at when those events happened, we're talking about 1996 and 1998, our two EEO claims. This Court has said that amount of time is too much. Now we have an incident that happens in 2001 that is distinct, and then we have something adverse that happens right after that. That is so much closer in time that it makes a lot more sense than to bring in something that happened a long time ago. I also wanted to talk about some of the other evidentiary rulings about the VA opening the door on hostile work environment. The appellant has claimed that simply because one of the attorneys who tried this case asked a question of Ms. Slaughter-Payne's treating physician, in which she asked the VA to support any medical issues or problems related to work prior to December 4, 2002. That question was asked of Ms. Slaughter-Payne on cross-examination. That question was asked in response to Ms. Slaughter-Payne's 32 pages of testimony about how what the VA had done to her as far as the one-person RIF and lateral transfer had affected her emotionally and mentally. She was the one that was drawing the causal link. And by asking that question, in no way did the VA open the door to allow a hostile work environment to come into this. The judge had limited Dr. Keller's testimony because he had repeated references after 2002 that she was working in a hostile work environment. Is that the testimony where then they were permitted to read the next sentence? Yes. And complete the paragraph? Right. She was asked, Ms. Slaughter-Payne answered yes, I think my doctor did say that, and the attorney said, well, let me show you, let me read the letter to you. And then for completeness under Rule 106, the court had the entire letter read into the record. But that in no way opened the door. It was simply cross-examination to establish that no doctor had ever said that what had happened at the VA was any way related to the physical and mental problems that she was having. I think I've concluded my argument. And in summary, I'd like to say that the mandate from this court was very clear. The court attempted to follow it, but did allow for some leeway in allowing past events to come in for background. It was well before the jury, and the jury came back after deliberating with a verdict in the VA's favor. And we would ask that the court affirm that verdict. Thank you. We'll add a minute for rebuttal, please. Thank you. Your Honor, counsel for the government, I think, has made an inaccurate statement. I wrote it down. Something that happened a long time ago. It was only going to confuse the jury. These other acts of protected activity didn't happen a long time ago. They happened just a few months ago, as demonstrated in the final pretrial order. Boy, I tell you, I am not exaggerating when I say there really was an unbroken chain of protected activity. There were protests held in May of 2000. That's not a long time ago. Moreover, this court's opinion in Cazaltier v. City of Salem, it's been the law of the circuit for a long time, has specifically said there are no time limits in reference to proving retaliatory animus. It depends upon the facts. Makes sense to me. And the facts of this case show an unbroken chronology of protests by this woman. She was an EEO troublemaker. So these are not remote events. These are related events that are anything but remote. Another problem with the district court's opinion is what she did with the issue of causation with Dr. Keller. Ordinarily, a physician, if you're treating someone for depression or anxiety, well, why are you sad? Why are you depressed? But even though this court's opinion in Goodman v. Staples Store wasn't even decided back in 1995, which was the deadline, February of 1995, that was the deadline in which to disclose expert witnesses. Six years before this court's opinion in this, in the Goodman case, the treating physician was not allowed to testify on causation because, according to the district court, an expert report was required. And even though there was evidence of record, yes, Judge Wallace. I don't recall your opposition arguing this. Oh, we do argue this, Your Honor. Did she argue it during her argument? She did when she mentioned Dr. Keller, Your Honor. And there is truth to what Your Honor says. I didn't bring it up, honestly, because I didn't have enough time. But when she mentioned Dr. Keller, I thought maybe I could bring it up briefly. But that was my sole point. But thank you, Judge Wallace. Okay. We have your arguments in mind. I do appreciate you stepping in to argue the case so that the court could keep it on the calendar as scheduled. So we appreciate that. I also appreciate your argument this morning. The case of Slaughter Payne v. Shinseki is submitted.
judges: Wallace, McKeown, Ikuta